Law Offices of Albert J. Rescinio, L.L.C.
1500 Allaire Avenue - Unit #101
Ocean Township, New Jersey  07712
Telephone:	(732) 531-2005
Telefax:	(732) 531-8009
By:	Albert J. Rescinio, Esq. (ID#034331989)
Attorneys for Plaintiffs New Jersey Second Amendment Society and Alejandro Roubian

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| New Jersey Second Amendment Society, a not for profit corporation of the State of New Jersey, *et al.*,<br><br>*Plaintiffs,*<br><br>vs.<br><br>Philip Murphy, Governor of the State of New Jersey, *et al.*,<br><br>*Defendants.* | Civil Action No.3:20-CV-05228-MAS-ZNQ |

**Plaintiffs' Memorandum of Law in Opposition to Motion to New Jersey Press Association to Dismiss Plaintiffs' Complaint,**
*and*

**In Support of Plaintiffs' Cross-Motion for Partial Summary Judgment against Defendant New Jersey Press Association,**
*and*

**In Support of Plaintiffs' Motion for Summary Judgment against Defendants Governor Murphy, "N.J. Coronavirus Task Force", Attorney General Grewal, and State Police Superintendant Callahan**

1

**Preliminary Statement:**

This is a simple case, and the facts are clear. So clear that Plaintiffs are moving at this early stage of the litigation for Partial Summary Judgment on the issue of Liability. But to be accurate, Plaintiffs are moving against Defendant NJPA for Summary Judgment by way of Cross-Motion as such Defendant has filed a merit less motion seeking to have the Plaintiffs' claims dismissed against them dismissed under *F.R.Civ.P.* 12(b)(6). Therefore, *technically* the Motion for Summary Judgment against Defendant NJPA is Cross-Motion, and to the extent that such *Rule* 12 motion exists and therefore somehow has to be addressed, Plaintiffs ask the Court to simply treat the Cross-Motion for Summary Judgment as the "opposition" to the *Rule* 12 Motion. The other Defendants have filed no such motions and as such the motion for Summary Judgment is brought against *them* by way of regular Notice of Motion.

It is accurately often said that the party that successfully *defines* the argument usually ultimately *wins* the argument. That applies in this case and to the motions before the Court. This is Plaintiffs's case, Plaintiffs have clearly defined the argument and claims, and Plaintiffs will not sit by quietly while some Defendants try to create ambiguity or uncertainly where there is literally room for none. To the point and specific as to this case, having no where to go to defend the actual limited and specific claims in the case as plead and brought by Plaintiffs against them, Defendant NJPA has undertaken and engaged in a course of conduct that can only be referred to as a bizarre wherein they desperately attempt to ignore reality - or get the Court to ignore reality - and instead of addressing the claims against them (as they have no defense), Defendant NJPA instead tries to re-frame the case and inaccurately argues that many of Plaintiffs' claims - which are clearly claims against *other parties* - do not and can not apply to them, which of course which states the obvious

and which adds nothing to this argument as those issues do not apply to them. This is just a clear case of an attorney attempting to obfuscate facts and claims hoping to confuse the Court.

So there be no question, Plaintiff claims against Defendant NJPA are limited to those as stated in the First and Second Counts and are easily described - *defined* - in layman's terms as follows: First, that by voluntarily undertaking the task of acting in the name of the New Jersey State Government (here, the New Jersey State Police and the Superintendent of New Jersey State Police Defendant Callahan) and acting with delegated state authority in administering the "State Police Press Credentials Program", and in so setting up criteria and unilaterally deciding who would and who and who would not be issued such credentials, that under the law Defendant NJPA qualifies as a "state actor" for purposes of imposing liability for wrongful conduct in accordance with the authority of 42 U.S.C. **§**1983. More specifically, when in May 2018 Defendant NJPA denied Plaintiff Roubian's application for "New Jersey State Police Credentials" that such denial was arbitrary and wrongful as Plaintiff Roubian satisfied all of the criteria and he should have been issued the credentials which was a violation of his First Amendment rights in the first instance. Plaintiff Roubian claims he is entitled to equitable relief and legal damages for this claim under 42 U.S.C. §1983. Moreover, the *actual process of application and decision on applications* implemented and administered by Defendant NJPA within which Plaintiff Roubian was wrongfully rejected failed to comport with existing clearly established law on what process was due under the Fourteenth Amendment as there was (1) no specification of reasons for denial, (2) no notice of appeal rights, (3) and indeed no appeal procedure whatsoever in any event. Plaintiff Roubian claims he is entitled to entitled equitable relief and legal damages for this claim under 42 U.S.C. §1983. Lastly, in furtherance of the foregoing, when Plaintiff Roubian was suddenly denied access to the Governor's

daily Press Briefings in March 2020, the reason given (rightfully or wrongly) was that Plaintiff Roubian did not have "... *valid Press Credentials* ..." (whatever that means), and had Plaintiff Roubian been issued the State Police Press Credentials as he was entitled he could NOT have been or would not have been wrongfully excluded for such reason. So in this sense, the 2018 wrongful denial in an unconstitutional process was "a" proximate cause of Plaintiff Roubian being excluded, and therefore Plaintiff Roubian claims he is entitled to equitable relief and legal damages for this claim under 42 U.S.C. §1983.

    Similarly, Plaintiff Roubian claims that he was also wrongfully denied a "Governor's Press Pass" and that such denial was arbitrary and wrongful as there are literally no published criteria and denial or granting of a "Governor's Press Pass" is therefore completely subjective and arbitrary. No one could or would argue that the Governor and his office are not "state actors" for purposes of 42 U.S.C. §1983, and that such denial (with no standards) violates the First Amendment because of the unfair restrictions the Gorernor put on Plaintiff Roubian's ability to obtain public information. Moreover, the *actual process of application and decision on applications* implemented and administered by Defendant Governor and his office which wrongfully rejected Plaintiff Roubian failed to comport with existing clearly established law on what process was due under the Fourteenth Amendment as there was (1) no specification of reasons for denial, (2) no notice of appeal rights, (3) and indeed no appeal procedure whatsoever in any event. Plaintiff Roubian claims he is entitled to entitled equitable relief and legal damages for this claim under 42 U.S.C. §1983. Lastly, in furtherance of the foregoing, when Plaintiff Roubian was suddenly denied access to the Governor's daily Press Briefings, the reason given (rightfully or wrongly) was that Plaintiff Roubian did not have "... *valid Press Credentials* ..." (whatever that means), and had Plaintiff Roubian been issued the

**4**

Governor's Press Pass as he was entitled he could NOT have been and would NOT have been wrongfully excluded for such reason. So in this sense, the wrongful denial was "a" proximate cause of Plaintiff Roubian being excluded, and therefore Plaintiff Roubian claims he is entitled to entitled equitable relief and legal damages for this claim under 42 U.S.C. §1983. Moreover, the bad faith of Defendant Governor Murphy can be shown by his simultaneous exclusion of Plaintiffs from access to his daily briefing schedule. *See* Declaration of Plaintiff Roubian submitted herewith.

### Defendant NJPA's Rule 12(b)(6) Motion to Dismiss:

Defendant NJPA has filed a motion to dismiss the entirety of Plaintiff's Complaint as against them claiming that the Complaint on its face fails to state a complaint upon which relief may be granted, therefore moving for dismissal under *F.R.Civ.P.* 12(b)(6).

### Legal Standard on *Rule* 12(b)(6) Motion:

To withstand a *F.R.Civ.P.* 12(b)(6) motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' ". *Ashcroft v. Iqbal,* 556 *U.S.* 662, 678 (2009) (citing *Bell Atlantic Corporation v. Twombly,* 550 *U.S.* 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 *U.S.* at 556). "The plausibility standard is not akin to the 'probability requirement,' but asks for more than a sheer [possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 *U.S.* at 556).

A District Court determining the sufficiency of a complaint under *Twombly* and Iqbal in the Third Circuit must take three steps:

> First, it must tak[e] note of the elements [the] plaintiff must plead to

**5**

> state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-plead factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

[*Connelly v. Lane Construction Corporation*, 809 *F.3d* 780, 787 (3d Cir. 2016) (quotations and citations omitted)].

Lastly,

> …[i]n deciding a *Rule* 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents.

[*Mayer v. Belichick,* 605 *F.3d* 223, 230 (3d Cir. 2010)].

Against this legal standard, as will be shown, the Defendants/ motion must be denied.

### Summary of Defendants' Arguments:

Defendant NJPA ague in their Point Heading III that: "NOT A SINGLE COUNT PLED BY PLAINTIFFS AGAINST NJPA STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED". (*See* ECF Document 32-1 at page 26 of 46). Nothing could be further than the truth. This is so much so, that rather than spending time actually responding to the actual Rule 12 Motion, Plaintiff will instead demonstrate that Defendant NJPA fails to meet the standard for entitlement for relief by way of Cross-Motion for Partial Summary Judgment.

### Statement of Uncontested Material Facts:

For purposes of this Memorandum plaintiff shall rely upon the facts as contained in the separately stated "Statement of Uncontested Material Facts" submitted herewith.

### Standard of Review:

Summary judgment is appropriate if the record shows "that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." *F.R.Civ.P.* 56(a). A District Court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *F.R.Civ.P.* 56(c)(1)(A); *Curley v. Klem*, 298 *F.3d* 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine " ... *whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law*." *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 251-52 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. " ... *[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact*." *Id.* at 247-48.

### Legal Argument:

**Point I:**
**Excluding Plaintiff Roubian from the Governor's Daily Press Briefings for failure to have "...** *valid press credentials* **..." was a clear and** *per se* **Violation of the First Amendment:**

It can not be disputed by the Defendants that the law is and has been long "clearly established" that arbitrary government denial of access to an event to a reporter otherwise entitled to attend and be present at event is equivalent to and is a therefore denial of the First Amendment speech rights. *See Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* 555 (1980). That is what took place in this case. Indeed, Plaintiff Roubian was routinely admitted to the "Governor's Daily Press

7

Event" without issue until he prevailed in Federal Court to have the definition of "essential business" to be expanded to include gun and ammunition sales and related business. Nor can the defendants deny that denial of Plaintiff Roubian's applications for "State Police Press Credentials" and "Governor's Office Press Pass" was a proximate cause of his being denied access.

**Point II:**
**The Process Used by Defendant NJPA and Defendant Superintendent Callahan and used by Defendant Governor Murphy in determining whether to issue "Press Credentials" or a "Press Pass" both Violated the First and Fourteenth Amendments:**

A core tenet of our legal system is that an individual has the right to have notice and a meaningful opportunity to be heard before being deprived of a protected interest. *See, e.g., Mathews v. Eldridge*, 424 *U.S.* 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (internal citation omitted). Indeed, the U.S. Supreme Court has recognized the necessity of providing such procedural protections to members of the media when access to government proceedings is being denied. *See Gannett Co., Inc. v. DePasquale*, 443 *U.S.* 368, 401 (1979) (Powell, J., concurring) ("If the constitutional right of the press and public to access [court proceedings] is to have substance, representatives of these groups must be given an opportunity to be heard on the question of their exclusion."); accord *Globe Newspaper Co. v. Superior Court*, 457 *U.S.* 596, 609 n.25 (1982) (quoting Justice Powell's concurrence in *Gannett*). These cases analyze the important constitutional rights of the media when their attempts to report on the workings of government are restricted.

The seminal case on the issue is out of the District of Columbia Circuit Court of appeals

where that Circuit recognized that "... the protection afforded news gathering under the first amendment guarantee of freedom of the press requires that this access not be denied arbitrarily or for less than compelling reasons." *Sherrill v. Knight*, 569 *F.2d* 124, 129 (D.C. Cir. 1977) (citations omitted). In that case, in considering the standards for obtaining a White House press pass, the D.C. Circuit directed the government to "... publish or otherwise make publicly known the actual standard employed in determining whether an otherwise eligible journalist will obtain a White House press pass." *Id.* at 130. The Court continued: "We think that **_notice to the unsuccessful applicant_** of the factual basis for denial **_with an opportunity to rebut is a minimum prerequisite_** for ensuring that the denial is indeed in furtherance of Presidential protection, rather than based on arbitrary or less than compelling reasons." (Emphasis added) *Id.* at 131. The holding in *Sherrill* has been adopted and followed by the Third Circuit and by the District of New Jersey for years, and as such the law is certainly "clearly estblished". *See Capital Cities Media, Inc. v. Chester,* 797 *F.2d* 1164 (3d Cir. 1986) (*en banc*); *Black United Fund of New Jersey, Inc. v. Kean,* 593 *F.Supp.* 1567 (D.N.J. 1984) (Sarokin, D.J.).

Implicit in this analysis is that written guidelines for access should be enforced neutrally and objectively — not by judging the favorability of the journalist's reporting. *See Getty Images News Servs., Corp. v. Dep't of Defense*, 193 *F.Supp. 2d* 112, 122 (D.D.C. 2002) (summarizing federal court cases as holding that "particular journalists could not be singled out for exclusion but rather were entitled to access on the same terms as other journalists"); accord *Am. Broad. Cos., Inc. v. Cuomo*, 570 *F.2d* 1080, 1083 (2d Cir. 1977) ("we think that the danger would be that those of the media who are in opposition or who the candidate thinks are not treating him fairly would be excluded. And thus we think it is the public which would lose."); *Westinghouse Broad. Co., Inc. v.*

*Dukakis*, 409 *F.Supp.* 895, 896 (D. Mass. 1976) (stating that news agencies have a right to be treated to access on equal terms and that the right, while not absolute, "may not be infringed upon by state officials in the absence of a compelling government interest to the contrary"). Even within the military context, the First and Fifth Amendments "... require, at a minimum, that before determining which media organizations receive the limited access available, [the Department of Defense] must not only have some criteria to guide its determinations but must have a reasonable way of assessing whether the criteria are met." *Getty Images*, 193 *F.Supp.2d* at 121.

    In this case there is no question that Plaintiff Roubian was not afforded a meaningful opportunity to challenge rejection of both an application for "New Jersey State Police Press Credentials" and his rejection of an application for a "Governor's Office Press Pass". Plaintiff Roubian maintains - and the reford bears out - that there was not a reasonable assessment of whether he met the criteria, and he was not provided with the required "... factual basis for denial with an opportunity to rebut." *Sherrill*, 569 F.2d at 131. Clearly had there been a process that would have afforded Plaintiff Roubian a meaningful opportunity to present his side of the story, he not only could have, but clearly WOULD have demonstrated that he was simply trying to carry out his role as a journalist in a manner that was ethically sound and respectful to all in full compliance with what "rules" there were. Moreover, Courts have recognized the negative effects retaliation has on journalists and the public. "Fear of retaliation may chill an individual's speech, and, therefore permit the government to 'produce a result which [it] could not command directly.'" Trulock, 275 F.3d at 404 (quoting Perry v. Sindermann, 408 U.S. 593, 597 (1972)); accord DeGuiseppe v. Vill. of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995) ("retaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling employee speech on

matters of public concern"). A jury is not necessary to determine that the sudden exclusion of Plaintiff Roubian and his being suddenly barred from access to the Governors daily schedule was no mere coincidence. And in any event, that information has no bearing un the underlying threshold liability claim and rather goes to "bad faith" or "deliberate indifference" which are assessed by a Jury when determining whether or in what amount to award Punitive Damages. Here, that portion of the case - money damages - is reserved still to be heard by a Jury.

**Point III:**
**All Named Defendants are "State Actors" for**
**for 42 *U.S.C.* §1983 Purposes:**

There is no question that Defendants Governor Murphy, "N.J. Coronavirus Stask Force", Attorney General, and Superintendant of State Police are all "state actors" for 42 *U.S.C.* §1983 Purposes. The only wrinkle that Plaintiff needs to make smooth, so to speak, is the issue of Defendant NJPA being a "state actor" which in this case on these facts is simple.

In this case it is undisputed that Defendant NJPA is a private not for profit association. However, it is hornbook law that a private party or a private entity such as Defendant NJPA can be treated as a "state actor" for 42 *U.S.C.* §1983 purposes and have liability imposed upon them pursuant to the statute. Each case is fact specific, and the Courts have developed several "tests" to determine whether a private person or entity is a "state actor" for 42 *U.S.C.* §1983 purposes .

In this case it is also undisputed that Defendant NJPA has voluntarily assumed unilateral responsibility for and unilaterally runs and administers the "New Jersey State Police Press Credentials Program", and in so doing decides who and who does not receive such credentials.

First, under the "close nexus" test, a private party can be fairly said to be a state actor where "*... there is a sufficiently close nexus between the state and the challenged action of the [private]*

11

*entity so that the action of the latter may fairly be treated as that of the state itself.*" *Blum v. Yaretsky*, 457 *U.S.* 991, 1004 (1982) (holding state responsible for private decision where it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed to be that of the State).

Second, under the "symbiotic relationship" test a private party can be fairly said to be a state actor where " ... *the state has so far insinuated itself into a position of interdependence* ..." with a private party that "... *it must be recognized as a joint participant in the challenged activity*." *Burton v. Wilmington Parking Authority*, 365 *U.S.* 715, 725 (1961) (holding privately owned restaurant's refusal to serve an African American customer constituted state action where the restaurant leased space from a parking garage owned by state agency).

Third, under the "joint action" test a private party can be fairly said to be a state actor where a private party is a "... *willful participant in joint action with the State or its agents*." *Lugar v. Edmonson Oil Company, Inc.*, 457 *U.S.* 922, 941 (1982).

Fourth and lastly, under the "public function" test a private party can be fairly said to be a state actor where the private party has been "... *delegated ... power traditionally exclusively reserved to the State.*" *Terry v. Adams*, 345 *U.S.* 461, 468-470 (1953) (state action found where private actor administered election of public officials).

Plaintiffs submit that a fair application of literally each of the four examples noted above where liability as a "state actor" may be imposed applies to actions of the Defendant NJPA at issue in this case by their officially delegated and State sanctioned administration of the "New Jersey State Police Press Credential Program" for and on behalf of the New Jersey State Police (clearly a "state entity" itself).

**<u>Conclusion:</u>**

  For the foregoing reasons and authorities cited in support thereof, it is respectfully submitted that the Defendant NJPA's motion be DENIED and that Plaintiff's Cross-Motion and Motion for Partial Summary Judgment be GRANTED.

                 **Respectfully submitted,**

                *s/Albert Rescinio*

                 **ALBERT J. RESCINIO, ESQ.**