<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NEW JERSEY SECOND AMENDMENT SOCIETY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHILIP MURPHY, Governor of the State of New Jersey, et al., <br><br> Defendants. | Civil Action No. 20-5228 (MAS) (ZNQ) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

    This matter comes before the Court upon Defendant New Jersey Press Association's ("NJPA") Motion to Dismiss Plaintiffs New Jersey Second Amendment Society ("NJSAS") and Alexander Roubian's ("Roubian") (collectively, "Plaintiffs") Complaint. (ECF No. 32.) Plaintiffs opposed (ECF No. 33) and NJPA replied (ECF No. 41). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, NJPA's Motion is granted.

I.    <u>**BACKGROUND**</u>[1]

    A.    **The Parties**

    Roubian is the President of NJSAS, a nonprofit civil rights organization dedicated to advancing the right to bear arms. (Compl. ¶¶ 11–12, ECF No. 1.) Roubian is also a reporter for

---

[1] For purposes of the instant Motion, the Court accepts as true and summarizes the factual allegations of the Complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

NJSAS's website. (*Id.* ¶ 12.) In that capacity, Roubian "routinely" covers "public government meetings." (*Id.*)

NJPA is a private nonprofit organization composed primarily of member newspapers. (*Id.* ¶ 10.) NJPA administers a program through which it issues the New Jersey Police Press Credentials. (*Id.* ¶ 13; Roubian Decl. ¶ 5, ECF No. 1-2.) According to NJPA's website, the Police Press Credentials are reserved for employees of news organizations that gather and disseminate "news of general interest."[2] (NJPA Website *8,[3] Ex. A to Compl., ECF No. 1-2; Compl. ¶ 13.) Those employees must "cover breaking on-scene crime and fire news events." (NJPA Website *8, Compl. ¶ 13.) The credentials are valid for one year and are intended "to aid police officers and other emergency personnel in identifying professional news reporters and photographers having a need for access to police and fire scenes in connection with their professional duties." (NJPA Website *8–9; Compl. ¶ 13.) The credentials are "not required nor intended for use related to covering municipal, county or state government meetings." (NJPA Website *8; Compl. ¶ 13.)

### B.   Press Pass Applications

Plaintiffs allege that NJPA "arbitrarily denied" each of their applications for the Police Press Credentials. (Compl. ¶ 14.) In support of their claim, Plaintiffs submit only a May 2018 application filed by Roubian on his own behalf. (Roubian Decl. ¶ 5; May 2018 E-Mail Correspondence ("EC") *19–20, Ex. C to Compl., ECF No 1-2.) The record indicates that, in denying Roubian's application, an NJPA representative explained that the credentials are reserved for reporters covering "breaking news." (May 2018 EC *18–19.) The NJPA representative also

---

[2] In deciding a motion to dismiss, courts may consider "exhibits attached to the complaint," "matters of public record," and "document[s] integral to or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." *Doe v. Univ. of Scis*, 961 F.3d 203, 208 (3d Cir. 2020) (citations omitted).

[3] Page numbers preceded by an asterisk refer to the page numbers on the ECF header.

explained that the credentials are not intended for government events but rather "are intended to assist law enforcement in on-site management of crime, accident, or natural disaster scenes." (*Id.* at *19.) Roubian replied that, "[r]ight or wrong, government officials seem to be under the impression that [the] press credential is required in some cases." (*Id.* at *18.) In response, the NJPA representative again explained that the "credentials are not meant to be used for . . . government or town hall meetings." (*Id.* at *16.) The NJPA representative also explained that Roubian's ineligibility is due in part to NJSAS being a "civil advocacy group with a targeted topic/audience" rather than a "news organization covering news of a general nature." (*Id.*)

Plaintiffs also allege that they applied to the Governor's Office[4] for a "'Governor's Office Press Pass' but each has had their application arbitrarily denied." (Compl. ¶¶ 9, 15.) The record indicates that Roubian submitted an application in April 2019, which the Governor's Office denied because NJSAS "is not a media outlet." (Apr. 2019 EC *22–23, Ex. D to Compl., ECF No. 1-2.)

### C.     COVID-19 Briefings

On March 9, 2020, in light of the COVID-19 pandemic, Governor Philip Murphy ("Governor Murphy") declared a public health emergency and state of emergency. (Compl. ¶ 18.) On March 21, 2020, Governor Murphy issued Executive Order 107, which mandated the closure of non-essential retail businesses. (*Id.* ¶ 22.) Executive Order 107 did not specifically designate gun stores as essential or non-essential. (*Id.* ¶ 23.) During this period, Plaintiffs "routinely attended" Governor Murphy's daily press briefings where they would ask whether the Second Amendment mandated that gun stores be considered an essential business. (*Id.* ¶ 24.) Plaintiffs

---

[4] The Governor's Office hereinafter refers to "[un]identified members of the New Jersey State Police Department, civil security, and other persons who administer the 'Governor's Office Press Pass' . . . and/or who administer access to the Governor's Internet Daily Public Appearance and Press Schedule and/or who at times relevant guarded and/or provided security for" Governor Phil Murphy's daily public briefings. (Compl. ¶ 9.)

appear to allege that, at the time, no credentials were required to access the briefings. (*Id.*) Governor Murphy eventually confirmed that gun stores were not essential. (*Id.*)

On March 23, 2020, NJSAS, along with other parties, filed a separate lawsuit, *Kashinsky v. Murphy*, No. 20-3127 (the "*Kashinsky* Lawsuit"), against the State for not including gun stores on the list of essential retail businesses. (*Id.* ¶ 25.) On March 28, 2020, the federal government issued advisory guidelines that identified gun stores and related businesses as essential. (*Id.* ¶ 26.) Two days later, the State issued an administrative order that designated federal firearm licensees as an essential retail business that may operate under certain conditions. (*Id.* ¶ 27.)

Plaintiffs allege that, "[a]s retaliation for taking on" Governor Murphy on the issue of having gun stores designated as essential, the Governor's Office denied them access to the Governor's daily press briefings. (*Id.* ¶ 30.) Plaintiffs assert that the Governor's Office used their lack of "valid 'Press Credentials'" as a pretext to deny them access to the briefings. (*Id.*) Plaintiffs also allege that the Governor's Office blocked their access to a state website portal that publishes the Governor's daily public appearance and press schedule. (*Id.* ¶ 31.)

On May 29, 2020, Plaintiffs filed the present five-count action against NJPA and other defendants.[5] (*See generally* Compl.) Plaintiffs assert that only Counts One and Two pertain to NJPA. (Pls.' Opp'n Br. 3, ECF No. 33-2.) Count One asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 ("Section 1983"). (Compl. ¶¶ 33–41.) Count Two asserts a Fourteenth Amendment claim under Section 1983. (*Id.* ¶¶ 43–48.) NJPA now moves to dismiss for failure to state a claim. (ECF No. 32.)

---

[5] The Complaint originally asserted claims against Governor Murphy, Attorney General Gurbir S. Grewal, the New Jersey Coronavirus Task Force, and Colonel Patrick Callahan (collectively, the "State Defendants"). The State Defendants have since been dismissed from this action.

4

## II.    LEGAL STANDARD

Rule $8(a)(2)$[6] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

---

[6] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III. DISCUSSION

NJPA argues that the Section 1983 claims should be dismissed because Plaintiffs fail "to establish that NJPA took *any* action, much less retaliatory action, against [Plaintiffs] at any time relevant to Plaintiffs' claims." (Def.'s Moving Br. 19–20, 28–29, ECF No. 32-1.)

"Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted). "In order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Id.* (alteration in original) (internal quotation marks and citation omitted).

### A. First Amendment

Count One asserts that Plaintiffs have a First Amendment right of access to Governor Murphy's daily press briefings and to the state website portal that publishes the Governor's daily public appearance and press schedule. (Compl. ¶¶ 33–41.) According to Plaintiffs, the Governor's Office denied them access to the briefings and website portal in retaliation for having filed the *Kashinsky* Lawsuit against the State. (*Id.* ¶¶ 30–31, 40–41.) Plaintiffs posit that the Governor's Office used their lack of valid press credentials as a pretextual reason to deny them access to the briefings. (*Id.* ¶¶ 30, 40.)

To state a claim for First Amendment retaliation under Section 1983, a plaintiff must allege that: (1) he "engaged in a protected activity"; (2) the "defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights"; and (3) there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

Here, the Complaint fails to set forth sufficient facts from which the Court can reasonably infer that NJPA participated in the alleged retaliation. As noted, the Complaint asserts that the Governor's Office—not NJPA or any representative thereof—denied Plaintiffs access to the briefings and website portal in retaliation for having filed the *Kashinsky* Lawsuit.[7] (Compl. ¶¶ 30–31.) The Complaint does not suggest that NJPA directed the Governor's Office, or any dismissed defendant, to deny such access. Nor does the Complaint suggest that NJPA knew of the *Kashinsky* Lawsuit so as to infer that NJPA retaliated against Plaintiffs for having filed that complaint. Indeed, the Complaint fails to mention NJPA during the period relevant to Plaintiffs' retaliation claim.

The only allegations pertaining to NJPA involve NJPA's denial of Roubian's 2018 application for the Police Press Credentials. (*Id.* ¶ 14; Roubian Decl. ¶ 5.) Those credentials, however, are only valid for one year. (NJPA Website *8–9.) The record does not suggest that Roubian reapplied for the credentials in 2020, when the purported retaliation occurred. In any event, as Plaintiffs seem to acknowledge, the Police Press Credentials are issued for identification purposes at emergency scenes, not to gain entry at government meetings. (Compl. ¶ 13; Roubian Decl. ¶ 5; NJPA Website *8.) The Complaint, therefore, fails to plausibly plead that NJPA denied Plaintiffs access to the briefings and website portal in retaliation for having filed the *Kashinsky* Lawsuit. The Court, accordingly, dismisses Plaintiffs' First Amendment claim.[8]

---

[7] To extent the Complaint lumps all defendants together without setting forth what each particular defendant is alleged to have done, those allegations constitute impermissible group pleadings and are insufficient to survive a motion to dismiss. *See Branch v. Christie*, No. 16-2467, 2018 WL 337751, at *3 (D.N.J. Jan. 8, 2018) ("When a number of different defendants are named in a complaint, plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying which [d]efendants engaged in what wrongful conduct." (alteration in original) (internal quotation marks and citation omitted)).

[8] Because the Court finds that the Complaint fails to sufficiently plead that NJPA took any retaliatory action against Plaintiffs, the Court does not reach the parties' remaining arguments.

### B.    Fourteenth Amendment

Count Two appears partially duplicative of Plaintiffs' First Amendment retaliation claim. (*See* Compl. ¶ 45 (asserting Plaintiffs' "First Amendment rights undoubtably qualify as a 'liberty interest' within the meaning of Section 1 of the Fourteenth Amendment").) In fact, Plaintiffs repeat the same allegations for their Fourteenth Amendment claim as they asserted for their First Amendment claim: Plaintiffs were denied access to the briefings and website portal in retaliation for having filed the *Kashinsky* Lawsuit against the State. (*Compare* Count One ¶¶ 40–41 *with* Count Two ¶¶ 47–48.) Therefore, to the extent Plaintiffs seek to assert a retaliation claim under the Fourteenth Amendment, that claim fails for the reasons set forth above.

To the extent that Plaintiffs seek to assert an equal protection claim against NJPA, that claim also fails. "To establish a 'class of one' equal protection claim, [p]laintiffs 'must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.'" *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49 (3d Cir. 2019) (citation omitted). Here, Plaintiffs fail to sufficiently plead any of the elements of a "class of one" equal protection claim. For example, Plaintiffs do not allege that NJPA issued the credentials to other identifiable and similarly situated individuals. Rather, Plaintiffs merely assert that granting access "to some persons" while "arbitrarily or for less than compelling reasons" denying access "to others" is a violation of the Equal Protection Clause. (Compl. ¶¶ 45–46.) Such "general accusations and the invocation of the Equal Protection Clause are not enough to allege a class of one claim." *Joey's Auto Repair & Body Shop*, 785 F. App'x at 49 (internal quotation marks and citation omitted). The Court, therefore, dismisses Plaintiffs' Fourteenth Amendment claim.

## IV.    CONCLUSION

For the reasons set forth above, NJPA`s Motion to Dismiss is granted. Counts One and Two are dismissed without prejudice. Plaintiffs may file an amended complaint addressing the deficiencies identified herein.[9] The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp, U.S.D.J.___
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[9] The Court notes that, since the filing of this Complaint, Plaintiffs appears have obtained access to the briefings and website portal. (ECF No. 31.)