**Law Offices of Albert J. Rescinio, L.L.C.**
**1500 Allaire Avenue - Suite 101**
**Ocean Township, New Jersey 07712**
**Telephone:** (732) 531-2005
**Telefax:** (732) 531-8009
**By:** Albert J. Rescinio, Esq. (ID#034331989)
**Attorneys for Plaintiffs New Jersey Second Amendment Society and Alexander Roubian**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **New Jersey Second Amendment Society,** *a not for profit corporation of the State of New Jersey;* and **Alexander Roubian,** *(1) individually, and (2) in his capacity as the President of the New Jersey Second Amendment Society, and (3) in his capacity as a reporter and journalist for* www.nj2a.org , ***Plaintiffs,*** v. **New Jersey Press Association ("NJPA"),** *a not for profit corporation of the State of New Jersey; and* **Peggy Stephan Arbitell,** *individually and in her capacity as the Business Manager for defendant NJPA,* ***Defendants.*** | Civil Action No. 20-5228 (MAS) (ZNQ) ***Civil Action:*** **First Amended Complaint and Jury Demand**[1] |

## JURISDICTION AND VENUE:

### A. Jurisdiction:

1.  Jurisdiction to entertain plaintiffs' Federal Constitutional legal claims is conferred on the

---

[1] Plaintiffs' original Verified Complaint and Jury Demand was filed on April 29, 2020 and listed as named defendants (1) Philip Murphy, New Jersey Governor; (2) New Jersey "Corona virus Task Force"; (3) Gurbir S. Grewal, New Jersey Attorney General; (4) Colonel Patrick Callahan, Superintendent of the New Jersey State Police; (5) "John Does 1-20; and (6) New Jersey Press Association. The original Verified Complaint and Jury Demand, as plead, consisted of 21 pages (with extensive exhibits), contained 58 numbered paragraphs, and five specific legal claims divided into five counts, specifically: FIRST COUNT: Violation of 42 *U.S.C.* §1983 – First Amendment; SECOND COUNT: Violation of 42 *U.S.C.* §1983 – Fourteenth Amendment; THIRD COUNT: Violation of New Jersey State Constitution; FOURTH COUNT: New Jersey Statutory Violation: "Open Public Meetings Act"; and FIRTH COUNT: New Jersey Common Law Violation: *Taurus v. Pine Hill*, 189 N.J. 497 (2007). Thereafter, plaintiffs settled their claims with all defendants except defendant New Jersey Press Association which was only a defendant relative to the legal claims in the First and Second Counts. On December 31, 2021 the Court issued a Memorandum Opinion (EFC No. 48) and Order (ECF No. 49) dismissing Counts One and Two against defendant New Jersey Press Association and simultaneous granting plaintiffs leave to file a First Amended Complaint and Jury Demand by February 16, 2021. This is that amended pleading which, by virtue of amicable settlement with all other defendants, now only asserts legal claims as to and against the only remaining non-settling party, defendant New Jersey Press Association and newly named defendant Peggy Stephan Arbitell.

United States District Court pursuant to 28 *U.S.C.* §1331. Authority to grant the plaintiffs' claim for declaratory and injunctive relief is authorized by 28 *U.S.C.* §2201 and 28 *U.S.C.* §2202 (Federal Declaratory Judgments Act"), *Rule* 57 (Declaratory Relief) and *Rule* 65 (Injunctions) of the *Federal Rules of Civil Procedure,* by *L.Civ.R.* 65.1 of the *Rules of the United States District Court for the District of New Jersey,* and by the general legal and equitable powers of this Court.

### B. Venue:

2. Venue is proper in the District of New Jersey, Trenton Vicinage, pursuant to 28 U.S.C. §1391.

### THE PARTIES:

3.. Plaintiff New Jersey Second Amendment Society (hereinafter "plaintiff NJ2AS") it is a not for profit corporation of the State of New Jersey with principal place of business located at c/o P.O. Box 96, Heightstown, New Jersey in the County of Mercer and State of New Jersey.

4. Plaintiff Alexander Roubian (hereinafter "plaintiff Roubian") hereby sues individually and in his capacity as the President and as a reporter of the plaintiff New Jersey Second Amendment Society. Plaintiff Roubian resides at c/o P.O. Box 96, Heightstown, New Jersey in the County of Mercer and State of New Jersey.

5. Defendant New Jersey Press Association (hereinafter "defendant NJPA") is a not-for-profit member organization of certain news and information outlets, primarily newspapers and digital media outlets, created to advance the careers of members. Defendant NJPA has been designated and delegated by the New Jersey State Police and the New Jersey Association of Police Chiefs the exclusive State authority of accepting and screening applications for, an issuing, "NJPA New Jersey State Police Press

Credentials". Though a private organization, the actions of the defendant NJPA exercising State authority of accepting and screening applications for, an issuing "New Jersey State Police Press Credentials", makes this defendant a "... *person* ..." who was at all times relevant acting "... *under color of state law* ..." and in accordance with and in furtherance of an "... *ordinance, regulation, custom, or usage* ..." and who at all times acted "... *with deliberate indifference to the plaintiff's Federal Rights* ...", all within the meaning of 42 *U.S.C.* §1983. Defendant NJPA's principal place of business is located at 810 Bear Tavern Road, Ewing Township, in the County of Mercer and State of New Jersey.

6.. Defendant Peggy Stephan Arbitell (hereinafter "defendant Arbitell") is the Business Manager of defendant NJPA and in individually and in her capacity as the NJPA Business Manager defendant Arbitell is granted complete and total discretion, with no criteria governing her decision and no appeal process, to subjectively unilaterally determine whether or not an applicant shall be issued "NJPA New Jersey State Police Press Credentials". Defendant Arbitell is a "... *person* ..." who was at all times relevant acting "... *under color of state law* ..." and in accordance with and in furtherance of an "... *ordinance, regulation, custom, or usage* ..." and who at all times acted "... *with deliberate indifference to the plaintiff's Federal Rights* ...", all within the meaning of 42 *U.S.C.* §1983. Defendant NJPA's principal place of business is located at 810 Bear Tavern Road, Ewing Township, in the County of Mercer and State of New Jersey.

### THE FACTS:

7. Plaintiff NJ2AS is a New Jersey based non-profit civil rights organization whose focus and mission is to end the hostile anti-Second Amendment and self-defense sentiment

3

within the New Jersey Legislature specifically and all aspects of New Jersey Government generally. Plaintiff NJ2AS uses innovative and bold direct-action tactics to expose, document, and take results-oriented action to confront any and all anti-Second Amendment government policies. By defending, protecting, and preserving the Second Amendment within New Jersey, plaintiff NJ2AS works to ensure that all citizen's civil rights are guarded, when compromised are restored and no longer degraded, and to prevent New Jersey from being used as a laboratory to destroy the Second Amendment nationwide.

8. Plaintiff Roubian is the President of Plaintiff NJ2AS and is one of the reporters for the NJ2AS web site found at www.nj2as.org. Plaintiff Roubian, on his own and on behalf of Plaintiff NJ2AS as a reporter, routinely attends public government meetings and video / digitally tapes such meetings and reports on such meetings and publishes reports and video and audio on the digital platform web site for the NJ2AS Membership and for the general public. Thousands of people nationally routinely access the web site for the most up to date and relevant information regarding New Jersey State and Local Governments and the Second Amendment. The digital platform web site is a major source of donations and fund-raising and revenue for NJ2AS precisely because of the up to date accurate and cutting edge information and news provided.

9. Defendant NJPA has been designated by the New Jersey State Police and the New Jersey Association of Police Chiefs with the delegated State authority of accepting and screening applications for and issuing "NJPA New Jersey State Police Press Credentials" in the name of the State of New Jersey. NJPA issued "NJPA New Jersey State Police Press Credentials" are specifically advertised as solely to be presented to police officers

4

and other emergency personnel on the scene of accidents and fires or other developing news stories and are ostensibly used as a way of identifying "professional" or "legitimate" news reporters and photographers who must be granted some access to police and fire scenes in connection with their professional duties for First Amendment purposes and general onlookers. The reality is that "NJPA New Jersey State Police Press Credentials" are used for better and more favorable access to all New Jersey State News events that than given to those who do not hold such "credentials". Eligibility for the credentials is ostensibly limited to bona fide legitimate news organization employees having regular contact with New Jersey State Police, local police, fire and EMS personnel at "breaking on-scene" crime and fire news events. "NJPA New Jersey Police Press Credentials" are not required or intended for use related to news organizations or reporters covering municipal, county or state government meetings in non emergency situations, though same are routinely used for preferential admission and treatment by the State.

10. Plaintiffs NJ2AS and Roubian have applied to Defendant NJPA for "NJPA New Jersey State Police Press Credentials" but each has had their application arbitrarily denied by defendant Arbitell and defendant NJPA notwithstanding their equal standing to others granted Membership and credentials and despite never being provided with a specification of reasons for denial or afforded a right to appeal the denial.

11. Defendant NJPA web site describes and classifies "Members" among the following categories: (1) Daily Newspaper Members; (2) Group Weekly Newspaper Members; (3) Community Newspapers of NJMG; (4) Gannett NJ Weeklies; (5) NJN Publishing; (6) New Jersey Hills Media Group; (7) Sample Media; (8) Star News Group; (9) Worrall

Community Newspapers; (10) Independent Weeklies; (11) Specialty Newspapers; (12) Digital News Organizations; and (13) Associate Members.

**12.** The "Specialty Newspapers", "Digital News Organizations" and "Associate Members" listed are as follows:

| SPECIALITY NEWSPAPERS | | | | |
|---|---|---|---|---|
| Atlantic City Weekly | 1000 W. Washington Ave., Pleasantville, NJ 08232 | 609-272-7017 | www.atlanticcityweekly.com | Catamaran Media LLC |

| DIGITAL NEWS ORGANIZATIONS | | | | REPRESENTATIVE |
|---|---|---|---|---|
| 6ABC.com | 4100 City Avenue, Philadelphia, PA 19131 | 215-878-9700 | www.6abc.com | Bernie Prazenica |
| Baristanet.com | P.O. Box 8203, Glen Ridge, NJ 07028 | 973-641-1003 | www.baristanet.com | Liz George |
| Hudson County View | 508 Palisade Ave., Apt. 1, Jersey City, NJ 07307 | 973-981-2325 | Hudsoncountyview.com | John Heinis |
| InsiderNJ.com | P.O. Box 66, 25 Fairview Ave., Verona, NJ 07044 | 201-798-7800 | www.insiderNJ.com | Michael Graham |
| Jersey City Times | 64 Wayne Street, Jersey City, NJ 07302 | 917-945-0875 | www.jcitytimes.com | Aaron Morrill |
| MyLakeNews.com | 30 Oakwood Road, Hopatcong, NJ 07843 | 866-969-5253 | www.MyLakeNews.com | James Fitzpatrick |
| New Jersey Globe | 1030 15th Street NW, Suite 266, Washington, DC 20005 | 201-724-0340 | www.NewJerseyGlobe.com | Kevin Sanders |
| NJ.com | 485 Route 1 South, Bldg. E, Suite 300, NJ 08830 | 732-902-4500 | www.NJ.com | Steve Alessi |
| NJSpotlight.com | 207 Orange Road, Montclair, NJ 07042 | 973-464-7392 | www.NJspotlight.com | John Mooney |

| ASSOCIATE MEMBERS | | | | REPRESENTATIVE |
|---|---|---|---|---|
| Amandla | 14 Glenview Drive, West Orange, NJ 07052 | 973-731-1339 | www.amandlanews.com | Ernest Opong |
| CBA Industries Inc. | 669 River Road, Elmwood Park, NJ 07407 | 201-414-5250 | | Barry Schiro |
| Customers By Design, LLC | 9-01 Arnot Place, Fair Lawn, NJ 07410 | 802-282-6700 | | Ed Efchak |
| Evergreen Printing Company | 101 Haag Ave., P.O. Box 786, Bellmawr, NJ 08031 | 856-933-0222 | www.egpp.com | John Dreisbach |
| Gibbons P.C. | One Gateway Center, Newark, NJ 07102 | 973-596-4863 | www.gibbonslaw.com | Tom Cafferty |
| Insurance Specialities | 946 Town Center, New Britain, PA 18901 | 215-918-0505 | | Mary Smith |
| JCP&L / FirstEnergy | 300 Madison Ave., P.O. Box 1911, Morristown, NJ 07962 | 973-404-8347 | www.firstenergy.com | Cliff Cole |
| Kean University | 1000 Morris Ave., Union, NJ 07083 | 908-737-0580 | wwww.kean.edu | Audrey Kelly |
| Kreischer Miller | 100 Witmer Road, Horsham, PA 19044 | 215-441-4600 | www.kmco.com | Richard Snyder |
| Metro Creative Graphics, Inc. | 519 Eighth Ave., New York, NY 10018 | 800-223-1600 | www.metrocreativegraphics.com | Gwen Tomaselli |
| MIDJersey Chamber of | 1A Quakerbridge Plaza Drive, Suite 2, | 609-689- | www.midjerseychamber.org | Jillian Stengl |

| | | | | |
|---|---|---|---|---|
| Commerce | Hamilton, NJ 08618 | 9960 | | |
| Monmouth University | Monmouth University, 400 Cedar Ave., West Long Branch, NJ 07764 | 732-571-4424 | www.monmouth.edu | John Morano |
| New Jersey Assoc. of School Administrators | 920 West State St., Trenton, NJ 08618 | 609-599-2900 | www.NJasa.net | Anne Gallagher |
| New Jersey Broadcasters Association | 2608-2610 Lakewood Road, Suite 3 Point Pleasant, NJ 08742 | 609-860-0111 | www.NJba.org | Paul Rotella |
| New Jersey Chamber of Commerce | 216 West State St., Trenton, NJ 08608 | 609-989-7888 | www.NJchamber.com | Johanna Sisto |
| New Jersey Education Association | 180 West State St., Trenton, NJ 08607 | 609-599-4561 | www.NJea.org | Steve Wollmer |
| New Jersey Hospital Association | 760 Alexander Road, P.O. Box 1, Princeton, NJ 08543 | 609-275-4069 | www.NJha.com | Kerry McKean Kelly |
| NJ School Boards Association | 413 West State St., P.O. Box 909, Trenton, NJ 08605 | 609-278-5202 | www.NJsba.org | Frank Belluscio |
| Pretty Brook Ventures | 492 Pretty Brook Rd., Princeton, NJ 08540 | 609-924-3248 | | Jim Kilgore |
| Publishers Circulation Fulfillment Inc. | 520 Washington Ave., Suite 500, Towson, MD 21204 | 410-821-8614 | www.pcfcorp.com | Jerry Giordana |
| Rutgers, The State University of NJ | School of Comm. & Info., 4 Huntington St., New Brunswick, NJ 08901 | 732-932-7500 | www.comminfo.rutgers.edu | Steve Miller |
| The Associated Press | 200 Liberty St., 19th Floor, New York, NY 10281 | 212-621-6923 | www.ap.org/NJ | Paul Memoli |
| The College of New Jersey | P.O. Box 7718, Ewing, NJ 08628 | 609-771-2424 | www.tcNJ.edu | Donna Shaw |
| The Gazette Newspaper | 343 Boulevard, Hasbrouck Heights, NJ 07604 | 201-288-8656 | www.the-gazette-newspaper.com | Fritz Rethage |
| Wrubel Communications | 12-32 River Road, P.O. Box 1311, Fair Lawn, NJ 07410 | 201-796-3331 | | Charlie Wrubel |

13. Included in the "Specialty Newspapers", "Digital News Organizations" and "Associate Members" who have been issued Membership in the NJPA and issued "NJPA New Jersey State Police Press Credentials" are organizations that clearly are not facially news gathering and disseminating services or businesses, nonetheless "bona fide" such services or businesses. A review of the Members list includes accounting firms, law firms, public utilities, universities and many other single issue "associations" (such as the New Jersey Chamber of Commerce and the New Jersey School Boards Association).

14. Because of defendant Arbitell and NJPA's disagreement with the political views of NJ2AS and Roubian, such plaintiffs have been arbitrarily denied both Membership in defendant NJPA and denied "NJPA New Jersey State Police Press Credentials" while Membership and credentials have been routinely permitted in the discretion of defendant

Arbitell to other similar organizations whose mission defendant Arbitell and defendant NJ2AS agree with. This has proximately resulted in a denial of access to public briefings and other public information on an equal footing with others similarly situated, which defendant Arbitell and NJPA are aware of, and which defendant Arbitell through further actions has ensured is the actual case in practice.

15. The novel coronavirus identified as "2019-nCoV" ("the virus"), first discovered in the city of Wuhan, Hubei Province, People's Republic of China ("China"), is a severe, potentially fatal respiratory illness that can result in pneumonia, acute respiratory distress syndrome, septic shock, and multi-organ failure. The World Health Organization declared on January 30, 2020, that 2019-nCoV is a "Public Health Emergency of International Concern". To prepare, by N.J. Executive Order No 102 (February 3, 2020). Former defendant Governor Murphy created a "Corona virus Task Force" ("CTF") according to law. Defendant CTF is Chaired by the Commissioner of the New Jersey Department of Health, and Members include the Commissioners or other agency heads (or their designees) of the New Jersey Department of Human Services, the New Jersey Department of Law and Public Safety, the New Jersey State Police, the New Jersey Department of Education, and the New Jersey Office of Homeland Security. Among enumerated duties, the former defendant CTF will report directly to the Office of the Governor and is charged with coordinating all State efforts to appropriately prepare for and respond to the public health hazard posed by the virus.

16. On March 9, 2020 former defendant Governor Murphy declared a formal "State of Emergency" in the entirety of New Jersey. (*See* N.J. Executive Order No. 103 (March 9, 2020)).

8

17. By Presidential Executive Order of March 13, 2020, Donald J. Trump, President of the United States, declared a national emergency pursuant to his constitutional and statutory powers, including those granted by Sections 201 and 301 of the National Emergencies Act, 50 *U.S.C.* § 1601, et seq., and consistent with Section 1135 of the Social Security Act, as amended, 42 *U.S.C.* § 1320b-5.

18. On March 16, 2020 former defendant Governor Murphy issued another Executive Order (*See* N.J. Executive Order No. 104 (March 16, 2020)) which established statewide social mitigation strategies for combating COVID-19 which included limiting the scope of service and hours of operation for restaurants and certain retail establishments to balance the need to allow individuals to access food and other essential materials with the need to limit unnecessary person-to-person contact. This Executive Order No. 104 specifically deemed a subset of businesses as "essential," including but not limited to grocery/food stores, pharmacies, medical supply stores, gas stations, healthcare facilities, and ancillary stores within healthcare facilities, and it authorized the State Director of Emergency Management - who is in fact Superintendent of State Police former defendant Colonel Callahan - to make additions, amendments, clarifications, exceptions, and exclusions to that list. This Executive Order No. 104 and subsequent Administrative Orders issued by the State Director of Emergency Management also placed restrictions on other businesses' scope of service and hours of operation, and also placed restrictions on the size of gatherings in the State. Gun Stores and Sporting Goods Stores that sold guns and ammunition were NOT included on the list in Executive Order No. 4 as "Essential" and as such were all otherwise ordered to limited hours of operation.

19. In *Heller v. District of Columbia,* 554 *U.S.* 570 (2008) the United States Supreme Court

9

ruled that the Second Amendment to the *United States Constitution*, made applicable to the States by virtue of the Fourteenth Amendment, protects an individual's ***fundamental Federal Constitutional right*** to possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes such as self defense within the home. This puts Second Amendment rights as fundamental and puts them on the same footing as other "fundamental" Federal Constitutional rights, including fundamental rights protected by the First Amendment. As such, concerned that the March 16, 2020 Executive Order's limitations infringed on fundamental Second Amendment rights, Plaintiffs NJ2AS and Roubian began to attend, film and report on the "Daily Public Press Briefings" held by former defendants Governor Murphy and former defendant CTF. Plaintiffs NJ2AS and Roubian were permitted to attend, film, ask questions at and report on the "Daily Public Press Briefings" held by former defendants Governor Murphy and CTF.

20. On Saturday March 21, 2020 at the daily public briefing former defendant Governor Murphy issued N.J. Executive Order No. 107 (March 21, 2020), which superseded Executive Order No. 4 and Ordered in relevant part that all *"New Jersey residents shall remain home or at their place of residence unless they are 1) obtaining goods or services from essential retail businesses, as described in Paragraph 6 ..."*. Executive Order No. 107 further Ordered that when in public all individuals must practice social distancing and stay six feet apart whenever practicable, and further Ordered that "brick-and-mortar premises" of all non-essential retail businesses must close to the public as long as this Executive Order No. 107 remains in effect.

21. Executive Order No. 107 included a non-inclusive list of certain retail businesses

designated as "Essential", but Gun and Ammunition Stores were not specifically included on this list. Executive Order No. 107 also specifically listed certain retail businesses that were NOT deemed to be "Essential" (including Casinos, Racetracks, Gyms, Movie Theaters, Shopping Malls, Libraries, etc.) that must close and remain closed to the public as long as the Order remains in effect. However, Gun and Ammunition Stores were not specifically included in this list either. Executive Order No. 107 specifically empowered the State Director of Emergency Management (who is the Superintendent of the State Police, former defendant Colonel Callahan) to shall have the discretion to make additions, amendments, clarifications, exceptions, and exclusions to this list. That same day March 21, 2020 former defendant Governor Murphy issued N.J. Executive Order No. 108 (March 21, 2020) which declared any county or municipal restriction imposed in response to COVID-19 that in any way will or might conflict with any of the provisions of Executive Order No. 107 (2020), or which will or might in any way interfere with or impede its achievement, or the achievement of Administrative Orders issued as authorized by my Executive Orders, invalid to ensure statewide uniformity.

22. During this time period plaintiffs NJ2AS and Roubian routinely attended the "Daily Public Press Briefings" held by former defendants Governor Murphy and former defendant CTF without issue and when permitted publically asked questions and argued that the Second Amendment mandated that Gun and Ammunition Stores be declared as "Essential Businesses". After Executive Order No. 107 was not clear, former defendants Governor Murphy and Colonel Callahan and AG all confirmed that Gun and Ammunition Stores WERE NOT considered "Essential" and as such were Ordered "closed" until further notice.

11

Order No. 107, but must operate under the following provisions:

    a.    FFLs may remain open to the public only for the purpose of completing the portions of a sale or transfer that must be conducted in-person under state and/or federal law and for the purpose of product maintenance and repair services;

    b.    All in-person sales or transfers shall be conducted by appointment and during limited hours so as to minimize congregating of persons; and

    c.    FFLs must operate in accordance with pargraphs 6 and 7 of Executive Order No. 107 regarding social distancing and all other applicable provisions of that Order.

26. The March 30, 2020 "ADMINISTRATIVE ORDER - ESSENTIAL BUSINESSES, NO. 2020-6" effectively added Gun and Ammunition Stores and related businesses to being now included in New Jersey's definition of "Essential" businesses, and all such stores and businesses re-opened.

27. On April 1, 2020 the *Kashinsky v. Murphy* case was effectively "stayed" as a result of the recognition of Gun and Ammunition Stores and related businesses being now included in New Jersey's definition of "Essential" businesses.

28. As retaliation for taking on the Governor's Administration and the CTF on the issue of Gun and Ammunition Stores and related businesses being added to the list of "Essential" businesses, plaintiffs NJ2AS and Roubian were thereafter specifically excluded from and barred from entry into the "Daily Public Press Briefings" held by former defendants Governor Murphy and former defendant CTF by uniformed members of the State Police posted at the doors for "security" for these otherwise ostaneible "Public Events". The

13

pretext being used by the State Police was that plaintiff NJ2A and Roubian "... did not have valid "Press Credentials" ...", with the State Troopers requiring either (1) a "Governor's Press Pass" (denied to plaintiffs) or alternatively "NJPA New Jersey State Police Press Credentials."

29. Specifically on April 7, 2020 State Police Officer Murray again continued to refuse plaintiff Roubian and NJ2AS access to the Governor's daily briefing claiming that plaintiffs were not deemed a "credible news agency" by either the Governor's Office or the NJPA and defendant Arbitell. State Police Officer Murrary advised plaintiff Roubian that he had specifically spoken on several occasions with "Peggy" (defendant Arbitell) and Seargent Murray advised plaintiff Roubian that defendant Arbitell had specifically and unequivocally advised him (Murray) that she was aware of and knew exactly who plaintiff Roubian was, and that plaintiff Roubian "... *100% was NOT working with or in any way affiliated with defendant NJPA, nor did he have any form of press credentials she was aware of...*", and that as far as plaintiff's right to admission into the Governor's daily Press Briefings, that defendant Arbitell had specifically stated that to him that since "... *Roubian did not have press credentials, he was NOT "good to go", and that Roubian should definitely NOT be admitted to the Governor's daily press briefing as he was not a credible news organization.*" This exchange between plaintiff Roubian and State Police Officer Murray was captured on film and can be seen at youtube.com/watch?v=IEOcFy9NXQM&feature=youtu.be . (Titled "Press denial 3'). State Police Officer Murray made it clear that it was his understanding, reaffirmed by defendant Arbitell, that she had the authority to permit or deny plaintiff Roubian and NJ2AS admission to the daily Governor's Press Briefings. Defendant Arbitell

14

intentionally gave State Police Officer Murray the false understanding that (1) plaintiffs Roubian and NJ2AS were "not credible news" and (2) that she had the authority to decide whether plaintiffs Roubian and NJ2AS should be admitted to the Governor's daily press briefings. While admittedly oddly delegated a degree state authority, defendant Arbitell used that State authority beyond what was conferred so as to wrongfully deny plaintiff Roubian and NJ2AS access the daily Governor's prss briefings proximately damaging such plaintiffs.

## CAUSES OF ACTION:

### FIRST COUNT:
### (Violation of 42 *U.S.C.* §1983 - First Amendment)

30. Plaintiffs hereby repeat and re-allege all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

31. The First Amendment to the United States Constitution provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

[*United States Constitution*, First Amendment].

32. The First Amendment is made applicable to the States and to State Action by virtue of the Fourteenth Amendment to the United States Constitution.

33. The First Amendment specifically guarantees the citizens "... *freedom of speech, or of the press* ..." and "... *the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*" These specifically enumerated rights guarantee all citizens the right to speak freely and disseminate information and equally guarantee all

citizens the related right to reasonably and freely receive information from their government officials.

34. 42 *U.S.C.* §1983 was enacted by Congress to provide citizens with a remedy for State action that deprives or is aimed at depriving a person of their rights as secured and guaranteed by the United States Constitution and laws.

35. 42 *U.S.C.* §1983 provides as follow:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person in the jurisdiction thereof to be deprived of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purpose of this section any act of Congress applicable exclusively to the District of Columbia shall be considered a statute of the District of Columbia.

[42. *U.S.C.* §1983].

36. 42 *U.S.C.* §1983 provides a remedy for state action aimed at depriving persons of their rights as protected and guaranteed by the Constitution and laws. 42 *U.S.C.* §1983, in addition to other remedies, authorizes declaratory relief, injunctive relief, nominal damages, compensatory damages, punitive damages and attorneys' fees.

37. For a party to prevail in an action under 42 *U.S.C.* §1983, it must be shown that [1] there has been / is / will be a violation of that party's rights as guaranteed and secured by the Federal Constitution or laws, and [2] that such violation was caused either directly or by a pattern, practice, usage or custom, by a "person" acting under the color of state law.

38. In the present case the defendants, by arbitrarily and unreasonably refusing plaintiffs Membership in defendant NJPA, wrongfully refusing plaintiff "NJPA New Jersey State

Police Press Credentials", and using the state authority delegated top them to effectively and intentionally deny plaintiffs Roubian and NJ2AS access to the daily Governor press briefings, was illegal and retaliatory and such defendants, because they oppose the political views of plaintiffs, have knowingly and intentionally and with deliberate indifference conspired to violate and have in fact violated plaintiffs' rights as clearly established by the First Amendment to the United States Constitution, and plaintiffs have been proximately damaged thereby.

## SECOND COUNT:
### (Violation of 42 *U.S.C.* §1983 - Fourteenth Amendment)

39. Plaintiff hereby repeats and re-alleges all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

40. The Fourteenth Amendment to the United States Constitution provides in relevant part as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> \*\*\*

[United States Constitution, Fourteenth Amendment, Section 1].

41. Specifically, Section 1 of the Fourteenth Amendment to the United States Constitution prohibits States from taking action that deprives a person of "... *life, liberty, or property, without due process of law* ..." and cumulatively and separately prohibits States from taking action that deprives any person of "... *the equal protection of the laws.*"

17

42. Plaintiffs First Amendment rights undoubtably qualify as a "liberty interest" within the meaning of the Section 1 of the Fourteenth Amendment and as such Plaintiffs may not be deprived of their First Amendment rights without due process of law. Plaintiffs are also entitled to the equal protection of the laws to others similarly situated.

43. Specifically, the law is clearly established that when public officials confer a right *to some persons* to appear and attend and participate in press conferences and press briefings, the First Amendment protection afforded news gathering under the first amendment guarantee of freedom of the press requires that this access not be denied arbitrarily or for less than compelling reasons *to others.* Moreover, if access is indeed granted to some but denied to others, due process requires that such persons denied access be given a written specification of reasons and there must be a right to appeal the denial based upon the specification of reasons for denial. *See Sherrill v. Knight,* 569 F.2d 124 (D.C. Cir. 1977); *see also Matthews v. Eldridge,* 424 *U.S.* 319, 333 (1976) ("The fundamental 'requirement of due process is the opportunity to be hear at a meaningful time and in a meaningful manner .'" (internal citation omitted) . Indeed, the United States Supreme Court has recognized the necessity of providing such procedural protections to members of the media one access to government proceedings is given to some but is being denied to others. *See Gannett Company, Inc. v. DePasquale,* 443 *U.S.* 368, 401 (1979) (Powell, J., concurring) ("If the constitutional right of the press and public to access [public proceedings] is to have substance, representatives of these groups must be given an opportunity to be heard on the question of their exclusion."); accord *Globe Newspaper Co. v. Superior Court,* 457 *U.S.* 596, 609, fn. 25 (1982) (quoting Justice Powell's concurrence in *Gannett*).

44. In the present case the Defendants, by arbitrarily and unreasonably refusing plaintiffs Membership in defendant NJPA, wrongfully refusing plaintiff "NJPA New Jersey State Police Credentials", and using the state authority delegated to them to effectively and intentionally deny plaintiffs Roubian and NJ2AS access to the daily Governor press briefings while allowing Membership and Press Credentials to be issued to others similarly situated, was illegal and retaliatory and such defendants, because they oppose the political views of plaintiffs, have knowingly and intentionally and with deliberate indifference conspired to violate and have in fact violated plaintiffs' rights as clearly established by Section 1 of the Fourteenth Amendment to the United States Constitution, and plaintiffs have been proximately damaged thereby.

## **REQUEST FOR RELIEF:**

**WHEREFORE**, plaintiff hereby demands judgment against defendants individually, jointly or severally as follows:

A.) An Order pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2201 and 28 *U.S.C.* §2202 ("Federal Declaratory Judgments Act") and *Rule* 57 and *Rule* 65 of the *Federal Rules of Civil Procedure*, declaring that defendants NJPA and Arbitell are both "state actors" for purposes of 42 *U.S.C.* §1983 who have, without legal, factual or equitable excuse, violated plaintiffs' protected Federal Rights "under color of state law" pursuant to a "policy, practice, custom or usage";

B.) An Order Enjoining such defendants from continuing to violate plaintiffs' protected Federal Rights and directing that plaintiffs be issued "NJPA New Jersey State Police Press Credentials" forthwith; and

- **C.)** An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Nominal Damages";

- **D.)** An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Compensatory Damages";

- **E.)** An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Punitive Damages";

- **F.)** Judgment pursuant to 42 *U.S.C.* §1988 awarding interest, costs of suit, and reasonable attorneys fees; and

- **G.)** Judgment awarding such further relief as the Court deems fair, just and equitable.

**DATED: February 15, 2021**       _____
                                    ALBERT J. RESCINIO, ESQ.

## JURY DEMAND:

In accordance with the Federal Rules of Civil Procedure Plaintiffs hereby demand a trial by jury on all contested material issues of fact.

**DATED: February 15, 2021**       _____
                                    ALBERT J. RESCINIO, ESQ.