**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY SECOND AMENDMENT SOCIETY, *et al.*, | |
| Plaintiffs, | Civil Action No. 20-5228 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| NEW JERSEY PRESS ASSOCIATION, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants New Jersey Press Association ("NJPA") and Peggy Arbitell's ("Arbitell" and together with NJPA, "Defendants") Motion to Dismiss Plaintiffs New Jersey Second Amendment Society (the "Society") and Alexander Roubian's ("Roubian" and together with the Society, "Plaintiffs") Second Amended Complaint with Prejudice. (ECF No. 72.) Plaintiffs opposed (ECF No. 78), and Defendants replied (ECF No. 82). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' motion.

**I.    BACKGROUND**

The parties are familiar with the factual background of this matter, and the Court incorporates by reference its October 15, 2021 Memorandum Opinion (the "Opinion"). (*See generally N.J. Second Amend. Soc'y v. N.J. Press Ass'n*, No. 20-5228, 2021 WL 4822050 (D.N.J. Oct. 15, 2021), ECF No. 63.) In the October 15, 2021 Order accompanying the Opinion (the "Oct.

15 Order"), the Court granted Defendants' previous motion to dismiss the First Amendment Complaint, dismissing certain claims with prejudice. (ECF No. 64.) The Court, however, allowed Plaintiffs to amend their claims for (1) First Amendment right-to-access, (2) Fourteenth Amendment procedural due process, and (3) First and Fourteenth Amendment violations for the 2018 denial of New Jersey Police Press Credentials.[1] (*Id.*) With this Court's permission, Plaintiffs filed the Second Amended Complaint, re-pleading those claims. (ECF No. 67.)

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[2] requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual

---

[1] The Court dismissed with prejudice claims under the (1) First and Fourteenth Amendment concerning membership in the Press Association, (2) First Amendment retaliation concerning access to the Daily Public Press Briefings, and (3) Fourteenth Amendment Due Process. To the extent Plaintiffs reallege these claims in the Second Amended Complaint, the Court reiterates their dismissal with prejudice.

[2] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

### III. **DISCUSSION**

In the Court's previous Opinion, it identified a series of shortcomings that Plaintiffs needed to address to cure the complaint's defects. *N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *12. Here, the Court finds that Plaintiffs failed to remedy the identified deficiencies. Moreover, Plaintiffs' added conspiracy claim, a reiteration of previously dismissed claims, is also deficient. *Id.* at *7. A more in-depth discussion of these issues follows.[3]

#### A.     **First Amendment Right-To-Access Claim**

Plaintiffs once again allege that Defendants violated their First Amendment rights because they denied Plaintiffs access to the Daily Public Press Briefings in April 2020. (*See* Second Am. Compl. ¶ 29.) The Court identified the claim's deficiencies in the Oct. 15 Order, but the Second

---

[3] The Court did not address whether Defendants were state actors in its discussion of the First Amended Complaint. However, the Court provided that "should [Plaintiffs] amend, the Court advises Plaintiffs to sufficiently . . . allege how Defendants are state actors." *N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *12 n.10. Plaintiffs have failed to heed this warning. Here, Plaintiffs properly identify that it is "hornbook law" that a private entity such as Defendants may, under certain circumstances, be treated as a state actor. (Pls.' Opp'n Br. 10, ECF No. 78.) But, other than adding a few conclusory statements in the Second Amended Complaint (Second Am. Compl. ¶¶ 40, 48), Plaintiffs never cured the dispositive defect identified in the Court's Opinion. Therefore, the Second Amended Complaint insufficiently pleads that Defendants are state actors.

Amended Complaint fares no better. To evaluate a right to access claim, the Court must conduct the necessary balancing test of "interests of the People in observing and monitoring the functions of their government" against the "government's interest and/or long standing historical practice of keeping certain information from public scrutiny." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 98 (3d Cir. 2013). The Second Amended Complaint fails to plead facts that would allow the Court to conduct that balancing test such as (1) whether access played a significant positive role in the functioning of task force meetings, (2) the connection between actions taken by Defendants and the deprivation suffered by Plaintiffs, and (3) if the Press Passes were the exclusive method of entry into the Daily Public Press Briefings. (*N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *6-7.) Consequently, the Court remains unable to determine if Plaintiffs have plausibly alleged a right to access under the First Amendment. *See Fowler*, 578 F.3d at 210 (noting that a facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

  **B.** **Fourteenth Amendment Right-to-Access Due Process Claim**

Plaintiffs likewise re-plead their Fourteenth Amendment due process claim alleging that Roubian's refusal of admission to the Daily Public Press Briefing by Officer Murray violated his procedural due process rights. (Pls.' Opp'n Br. 12.) As the Court previously delineated, claims for procedural due process violations require plaintiffs to allege that (1) they were "deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,'" and (2) that "the procedures available to [them] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Here, Plaintiffs still do not plead facts that demonstrate Defendants denied them access to the Daily Public Press Briefing. Instead, Plaintiffs continue to simply allege that the State denied Roubian access, and that Arbitell merely informed the State

that Plaintiffs did not have Press Passes, all true information. (Second Am. Compl. ¶ 29.) Although Plaintiffs allege that "but for the actions of [Defendants], [P]laintiffs [would have] been admitted to the Governor's . . . Press Briefings," (Pls.' Opp'n Br. 12-13), Plaintiffs provide no facts that would support that assumption other than their own, conclusory statement. The Second Amended Complaint does nothing to clarify or substantiate its allegation that Arbitell somehow controls the actions of the State or Police Officer Murray. The Court, accordingly, dismisses this claim.

    C.    **First and Fourteenth Amendment Claims for the 2018 Denial of New Jersey Police Press Credentials**

Next, Plaintiffs re-plead their First and Fourteenth Amendment claims that Defendants retaliated against Plaintiffs because of their political views by denying Roubian a Press Pass. (Second Am. Compl. ¶¶ 40, 46.) Regarding the First Amendment claim, the Court previously instructed Plaintiffs that they must allege: "(1) clear statements of protected activity that occurred *before* the alleged retaliation; (2) allegations that those statements were made to or known by Defendants *before* the alleged retaliation; and (3) allegations explaining how Plaintiffs' protected activity caused the Press Pass denial." *N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *10.

Confusingly, the Second Amended Complaint does not take any steps to rectify these identified deficiencies other than through conclusory statements that Plaintiffs were denied press passes because of their political views. (Second Am. Compl. ¶ 40.) But once again, Plaintiffs allege not a shred of information about activity they engaged in before the denial of the Press Pass from which the Court can glean that Defendants retaliated against them. All in all, the Second Amended Complaint remains inadequately pled. *See Iqbal*, 556 U.S. at 678 (holding that the court may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." (citing *Twombly*, 550 U.S. at 555)).

Regarding the Fourteenth Amendment violation, Plaintiffs maintain that they were not afforded a meaningful opportunity to challenge the rejection of . . . "an application for New Jersey

5

State Police Press Credentials." (Pls.' Opp'n Br. 16 (internal quotation marks omitted).) Harkening back to the Opinion, the Court explained that to assert a claim on these allegations, Plaintiffs must further allege facts "to help the Court determine whether Plaintiffs are bona fide journalists" to assert an interest in the Press Pass. (*N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *11.) The Second Amended Complaint, once again, fails to meet that requirement. Indeed, the Court posed specific questions to help with the inquiry, to which Plaintiffs provided no further information. *Id.* ("How many reporters does the Society employ? Do Plaintiffs have other press credentials? How often do Plaintiffs publish? What do Plaintiffs publish?"). Plaintiffs never even clarified why their organization, focused on civil rights, is entitled to a Press Pass to access emergency crime scenes. (*See generally* Second Am. Compl.) The Court, accordingly, must conclude that the procedural due process claim is still inadequately pled.

   D.   **Plaintiffs' Additional Conspiracy Claim**

Finally, the Court addresses Plaintiffs' singular novel claim for conspiracy. Curiously, this claim seems to be merely a resuscitation of the retaliation claim Plaintiffs raised in the First Amended Complaint. (*Compare N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *8-9 *with* Second Am. Compl. ¶ 48 ("[Defendants] have conspired with non-party State Police Officer Murray (and perhaps others yet to be determined) . . . to *retaliate* against . . . [P]laintiffs . . . because they disagreed and disagree with the [P]laintiffs' political views, specifically [P]laintiffs' expansive view of Second Amendment rights, such wrongful actions being in direct violation of [P]laintiffs' First Amendment [r]ights.") (emphasis added).

This retaliation theory has already been dismissed with prejudice, and this new claim fails on the same grounds. More specifically, "Plaintiffs suffer from a common-sense timing problem: retaliatory acts must *follow* a protected activity." *N.J. Second Amend. Soc'y*, 2021 WL 4822050, at *8. Here, Plaintiffs continue "to posit that Defendants retaliated against Plaintiffs' protected

6

activity *in 2020* by denying them a Press Pass *in 2018*. Simple logic defeats Plaintiffs' fatally flawed pleading." *Id.* Therefore, the conspiracy count is not adequately pled.

## IV. CONCLUSION

"Where the plaintiff ha[s] already amended [the] complaint and yet failed to allege sufficient facts, the courts may find that [t]hree bites at the apple is enough, and conclude that it is proper to deny leave to replead." *Mimms v. U.N.I.C.O.R.*, No. 09-1284, 2010 WL 892200, at *9 (D.N.J. Mar. 8, 2010), *aff'd*, 386 F. App'x 32 (3d Cir. 2010) (internal quotation marks omitted). The Second Amended Complaint marks Plaintiffs' third bite at the apple. Yet Plaintiffs have not "amend[ed] in any meaningful way to address the deficiencies" in the pleading. *Jean-Pierre v. Schwers*, 682 F. App'x 145, 148 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 334 (2017). The Court accordingly, grants Defendants' Motion and Dismisses the Second Amended Complaint with prejudice. An appropriate order will follow.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**